BRIGGS *v.* WISWELL.                    · { Mar. 20, 1876.

*Replevin—Filing new bond.*

The court, upon a proper case being made, may permit the plaintiff to file a new or additional bond, so that the security may be double the actual value of the property replevied.

The plaintiff alleged in his writ that the value of the property replevied was $5,000, and filed a bond in the sum of $8,000. *Held*, that he might be permitted to show that the value did not exceed $4,000; also, that he might file an additional bond for $2,000, or a new bond for $10,000.

Upon the trial, the value of the property alleged in the writ is not conclusive against the plaintiff.

REPLEVIN. The value of the property is alleged in the writ at $5,000. The bond is for $8,000. The defendants moved to quash the writ. The plaintiffs claimed, and offered to prove, that the value of the property replevied did not exceed $4,000, which the defendants denied.

The plaintiffs moved to amend the writ by striking out the word "five" after the words "value of," and inserting instead thereof the word "four." They also moved for leave to file a new or additional bond, as, and in such sum as, the court may order; and that the officer who served the writ might have leave to amend his return according to the facts. The court denied the plaintiffs' motions, and ordered that the writ be quashed; and the plaintiffs excepted.

The questions of law arising on the foregoing case were transferred to this court by RAND, J.

*Wheeler*, for the plaintiffs.

*Small*, for the defendants.

SMITH, J. The motion to quash the writ is in the nature of a plea in abatement. No question is made here that it was not seasonably made. The objection does not go to the merits of the action, and for that reason cannot prevail unless demanded by a strict compliance with the letter of the statute.

The statute provides that the plaintiff in a writ of replevin shall give bond to the sheriff, with sufficient sureties, in a sum not less than double the value of the property replevied; conditioned to prosecute his suit, and to pay all such damages and charges as may be awarded against him. Gen. Stats., ch. 226, sec. 6. There is no provision of the statute for determining in what way the valuation of the property shall be ascertained. It would seem reasonable to hold that the officer would not be bound by the value alleged in the writ, but might require the plaintiff to furnish a bond in double the value of the property without regard to the allegation in the writ, because he is liable to an action if he takes insufficient security. *Runlett* v. *Bell*, 5 N. H. 436; *Ladd* v. *North*, 2 Mass. 516. In *Pomeroy* v. *Trimper*, 8 Allen 401, it was said the Massachusetts statute of 1789 (ch. 26, sec. 4), which was similar to our statute above cited, " did not prescribe any mode of fixing the value, and, of course, left the officer liable to an action if he took insufficient security. Under that statute a practice grew up, to some extent, of inserting a valuation in the writ, perhaps with a view of guiding the officer in fixing the amount of the security which he should require of the plaintiff. But the plaintiff, who expected in most cases to recover the

goods specifically, and damages for their detention only, had no interest in setting the goods at their full value, and often undervalued them in the writ in order to diminish the penalty of his bond. To avoid this, and perhaps also to protect the officer, the statute of 1824 (ch. 106, sec. 1) provided that whenever the defendant or the officer should suppose that a bond in a sum twice the value of the goods as alleged in the writ might be an insufficient security, the officer should cause them to be appraised by three disinterested persons, and return their appraisement on the writ, and take a bond to the defendant in double such appraised value. That statute only shows that a valuation had been sometimes inserted in the replevin writ, not that it was useful or necessary."

The object of requiring a bond is, that the party who is in possession of goods, and therefore *prima facie* entitled to the custody of them, may have security that he will be reimbursed for their value when they are taken from his possession upon this process by another who claims to own them, but subsequently fails to prove the title in himself. It is the duty of the officer, upon being required to serve a writ of replevin, to inquire as to the value of the property and the security of the sureties,—not that he will be expected to ascertain the exact value of the goods to be replevied, for that might be attended with inconvenient delay and expense, but to satisfy himself to a reasonable certainty that the plaintiff has not undervalued them, and that the bond tendered is, as to the amount of the penal sum, a substantial compliance with the statute. If he finds the goods have been undervalued, and the bond tendered insufficient in the amount of the penal sum, he would not only be justified in not serving the writ, but he would, under such circumstances, be liable to an action the same as when he takes insufficient sureties without using reasonable effort to ascertain their sufficiency.

In the first instance, then, in the absence of any provision of the statute for ascertaining the value of the goods to be replevied, the officer should make such investigation as to become satisfied that the bond tendered is a substantial compliance with the statute. But when he has done this, and has returned the writ into court, it would be strange if the court could not inquire into the sufficiency of the bond, and make such orders as would compel the plaintiff to increase his bond or furnish additional sureties. Has it always been the law of this state, and is it the law to-day, that the plaintiff can wilfully undervalue the property in his writ to such an extent that a bond in double the amount of such alleged value would be manifestly far below the actual value of such property, and that the officer and the defendant must submit to such allegation? It would be a reproach to our laws if it were so.

The form of the writ of replevin, as prescribed in Gen. Stats. 411 (ch. 203, sec. 18), requires the plaintiff to allege the value of the goods to be replevied, and is in this respect unlike the form in use in Massachusetts. *Litchman* v. *Potter*, 116 Mass. 371. The allegation is undoubtedly competent evidence upon the trial as an admission of value by the plaintiff, but I see no reason why it should be held to be con-

clusive as against him. What weight shall be given to the admission, is a question for the jury under all the circumstances under which it was made. If there should be any facts tending to explain the circumstances under which it was made, it would only be reasonable that the plaintiff should have the opportunity to lay them before the jury. Often, when he sues out his writ, he may not have the means of fixing the value of the property. It is not in his possession, but in that of the defendant. He may never have seen it, or, in the haste that frequently necessarily is incident to the instituting of a suit, it may be impossible for him to state the value with entire exactness. I think, therefore, it would be unreasonable to hold that he should be precluded from laying any evidence before the jury upon the question of value, because he may have been led, for reasons that turn out not to be well grounded, to set the value in his writ higher than it actually is.

In the case before us, the plaintiff alleged the value of the goods to be $5,000, and furnished a bond for $8,000. If the true value is alleged, then it is manifest the bond is insufficient. He asks to be allowed to amend his writ by striking out the valuation of $5,000 and inserting $4,000, and claims, and offers to prove, that the value of the property did not exceed $4,000. I think our statutes, in regard to amendments, are broad enough to allow this amendment to be made, if it shall appear that the value of the property did not exceed that sum. Gen. Stats., ch. 207, secs. 8, 9. It has been so held in Massachusetts under a similar statute. *Hammond* v. *Eaton*, 15 Gray 186 ; *Bean* v. *Green*, 4 Cush. 279. The statute requires the plaintiff to furnish a bond in a sum not less than double the value of the property replevied. If he has done this, it certainly works no hardship to the defendant to allow him to amend the writ to conform to the fact.

The plaintiff also moves for leave to file a new or additional bond, as, and in such sum as, the court may order ; and this, I think, may be done. In *Seaver* v. *Allen*, 48 N. H. 473, the writ was indorsed by a resident of Michigan. The defendant moved to quash it for want of a proper indorsement, and the plaintiff moved for leave to amend by furnishing a new indorser, which the court, at *nisi prius*, granted, although, in *Pettingill* v. *McGregor*, 12 N. H. 179, 180, and *Brackett* v. *Bartlett*, 19 N. H. 129, 130, it had been held that this could not be done. At the law term, DOE, J., remarked,—" Since those decisions were made, the construction of the statute of amendments has been growing more and more liberal ; and now the language of the statute is generally taken in its ordinary and natural sense. The strict and narrow construction by which parties were often deprived of relief, which the statute was intended to give, is becoming, if it has not become, obsolete ; " but whether the motion to quash, if it had been seasonably made, would have been granted, was not decided.

In *Kendall* v. *Fitts*, 22 N. H. 1, which was replevin, the plaintiff was permitted, in order that he might call one of his sureties on his bond as witness, to file a new bond with other sureties. EASTMAN, J., remarked,—" By our practice, the sureties can be changed by order of

the court, in the same manner as indorsers of writs are changed. * * So long as the court can see that the security is in no way impaired, nor delay caused, the design of the law is not defeated by permitting the change. * * In the haste and inexperience of doing business, it is no uncommon thing for the very witness, upon whose testimony a party's action may mainly depend, to indorse a writ or sign a bond required by statute; and not to permit a change in such circumstances would oftentimes prevent justice from being done."

These cases, though not directly in point, yet are important as showing that the court will not give a narrow construction to the statute, especially when injustice would thereby be done. I am unable to see how in this case the rights of the defendant can be affected by allowing the plaintiff, if he has a just cause, the opportunity to prove it, particularly when he is willing and offers to file a new bond in such sum as the court may order: I cannot see how the defendant's rights have been or will be prejudiced thereby. On the other hand, to deny the plaintiff's motion would result in subjecting him to the payment of heavy damages to the defendant, equal to the full value of the goods replevied, and costs, when he might prove that clear title to the same was in himself, if he could be permitted to show it. I do not think the rights of parties should be sacrificed upon technicalities, when there is nothing in a statute that requires it to be rigidly construed: the one under consideration certainly does not require such construction.

CUSHING, C. J. The officer's return on the first of these writs, a copy of which has been obtained from the clerk, is in the following words: "Strafford ss. Aug. 19th, 1875. The said Briggs and Taylor, having given bond according to law, I have replevied the rags within mentioned, and delivered the same to said Briggs and Taylor."

This is according to the form given in Bell's Justice and Sheriff, art. 657, from which I infer that this learned author, and the experienced officers and clerks whose assistance he acknowledges in his preface, have understood that the taking a bond according to law was matter material to be returned.

Indeed, the plaintiffs themselves, by taking the position that this writ is to be quashed on motion because the sheriff did not take a sufficient bond, tacitly admit this to be the law. The taking of a sufficient bond is clearly made by statute one of those things necessary to the correct service of the writ, without which the proceedings of the officer would be nugatory, and which therefore must be shown in his return.

In the case of *Brown* v. *Davis*, 9 N. H. 76, it was held that "Between the parties to a suit, and those claiming under them as privies, and all others whose rights and liabilities are dependent upon the suit as bail and indorsers, the return of the sheriff of matters material to be returned is so far conclusive evidence that it cannot be contradicted for the purpose of invalidating the sheriff's proceedings, or defeating any right acquired under them."

It appears to me that this is emphatically a case for the application of this principle. The taking a sufficient bond is a material part of the service of a writ, and is material to be returned by the officer, and, I think, must be conclusive upon the parties.

The wisdom of this provision of the law is most apparent in this case. If the validity of this proceeding could be made to depend upon the exact compliance with the terms of the statute, and the parties were liable to be delayed and hindered by the investigation of such matters, great inconvenience would necessarily follow. The law wisely avoids these inconveniences by not permitting the officer's return to be questioned in this stage of the proceedings, but leaving the defendant to seek his indemnity from the officer, if the bond is not large enough, or is otherwise insufficient.

Undoubtedly, the officer on whom this responsibility rests cannot be affected by the amount stated in the writ as the value of the property: he cannot be excused by an undervaluation of the property in the writ by the plaintiff, nor bound by an over-statement. It may be that the amount set down in the writ may be *prima facie* evidence against the plaintiff of the value of the property, but I think it cannot go beyond that.

With these views of the law, the proposed amendments seem quite immaterial. It does not appear to me that the plaintiff will gain or lose anything by making the amendment, or that the defendant will be prejudiced by granting the leave required. I think, therefore, that the motion to dismiss must be denied, and the plaintiff may have leave to make the desired amendments.

LADD, J., concurred.

*Exceptions sustained.*